☑ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Information associated with Apple Directory<br>Service Identifier (DSID) ███████ that is<br>stored at premises controlled by Apple Inc. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No.   21-829M(NJ) |

**CLERK'S OFFICE**
**A TRUE COPY**
**Mar 12, 2021**
**s/ Shanene Frederick**
**Deputy Clerk, U.S. District Court**
**Eastern District of Wisconsin**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before   March 26, 2021    *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   U.S. Magistrate Judge Nancy Joseph   .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   March 12, 2021 @ 3:43 p.m.       *[signature]*
                                                   *Judge's signature*

City and state:   Milwaukee, WI            U.S. Magistrate Judge Nancy Joseph
                                                      *Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>21-829m(NJ) | Date and time warrant executed:<br>8:00PM 3/12/2021 | Copy of warrant and inventory left with:<br>Apple |
| Inventory made in the presence of :<br>NA | | |

Inventory of the property taken and name(s) of any person(s) seized:

One zip file containing records for ████████████



**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 4/2/2021

████████████████████████
*Printed name and title*

Case 2:21-mj-00829-NJ    Filed 12/29/25    Page 2 of 42    Document 13

**<u>ATTACHMENT A</u>**

**Property to Be Searched**

This warrant applies to information associated with Apple Directory Service Identifier

█████████████████████████████████ (the "Target Apple Account"), that is

stored at premises owned, maintained, controlled, or operated by Apple Inc., a company

headquartered at One Apple Park Way, Cupertino, California.

## ATTACHMENT B

### Particular Things to be Seized

## I.     Information to be disclosed by Apple Inc. ("Apple")

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on March 3, 2021, Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.    All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.    The contents of all emails associated with the account, from account inception to present, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d. The contents of all instant messages associated with the account, from account inception to present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e. The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f. All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g. All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h. All records pertaining to the types of service used;

i. All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

3

## II.    Information to be seized by the government

All information described above in Section I of Attachment B that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 1029 (trafficking access devices), 1028 (identity theft), 371 (conspiracy), 1343 (wire fraud), 1030(a)(2) (illegally accessing a protected computer), 1030(a)(5) (illegally damaging a protected computer), or 1030(b) (conspiracy to commit computer fraud) (collectively, the "Subject Offenses"), that have been and are being committed by unknown persons, and their associates, since approximately July 26, 2016, including information pertaining to the following matters:

a.    All communications regarding the operation of Genesis Market;

b.    Information that constitutes evidence of the identification or location of the user(s) of the Target Apple Account;

c.    Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

d.    Information that constitutes evidence indicating the user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

e.    Information regarding any strains of malware;

f.    Information regarding identity theft and/or personal identification information;

g.    Information that constitutes evidence concerning how and when the accounts were accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Account user;

h.    Evidence related to virtual currency addresses and transactions;

i.    Evidence related to transactions at virtual currency exchanges and/or the transfer of virtual currency; and

4

j.     Evidence indicating how and when the accounts were accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the offenses under investigation.

`     This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

5

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Mar 12, 2021
s/ Shanene Frederick
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with Apple Directory Service Identifier (DSID) ▮▮▮▮ that is stored at premises controlled by Apple Inc. | )<br>)<br>)<br>)<br>)<br>) Case No.<br>21-829M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1030 | Computer Fraud |
| 18 USC 1028 | Identity Theft |
| 18 USC 1029, 371, 1343 | Access Device Fraud, Conspiracy, Wire Fraud |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date* ▮▮▮▮
18 U.S.C. § 3103a, the basis of which is set forth o▮▮▮

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____Telephone_____ *(specify reliable electronic means)*.

Date: March 12, 2021

*Judge's signature*

City and state: Milwaukee, WI

U.S. Magistrate Judge Nancy Joseph

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## APPLICATIONS FOR SEARCH WARRANTS

I, ██████████ being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of application for a search warrant for information associated with Google Account ID ████████████████████ ██████████████████ (the "Target Google Account") that is stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California.

2.      I further make this affidavit in support of an application for a search warrant for information associated with Apple Directory Service Identifier[1] █████ ███████████ ██████████████ (the "Target Apple Account"), that is stored at premises owned, maintained, controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California.

3.      The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of applications for search warrants under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google and Apple ("the providers") to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information

_____

[1] An Apple Directory Services Identifier (DSID) is the account identifier for all records stored by Apple of an Apple user.

described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

4.　███████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████
████████████

5.　　This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.　　Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1029 (trafficking access devices), 1028 (identity theft), 371 (conspiracy), 1343 (wire fraud), 1030(a)(2) (illegally accessing a protected computer), 1030(a)(5) (illegally damaging a protected computer), and 1030(b) (conspiracy to commit computer fraud) (collectively, the "Subject Offenses"), have been committed by unknown persons. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

7.　　This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), &

2

(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND RELATED TO VIRTUAL CURRENCY AND DARK MARKETS

### Bitcoin

8.     Bitcoin—or "BTC"—is a decentralized virtual currency, which is circulated over the Internet, but which is not backed by a government. BTC is supported by a peer-to-peer network. All transactions are recorded on BTC's public ledger, called the blockchain. Although transactions are visible on the public ledger, each transaction is only listed by a complex series of numbers that does not identify the individuals involved in the transaction. This feature obscures virtual currency transactions; however, it is sometimes possible to determine the identity of an individual involved in a virtual currency transaction through several different tools that are available to law enforcement. For this reason, many criminal actors who use virtual currency to facilitate illicit transactions online (e.g., to buy and sell illegal drugs or other unlawful items or services) look for ways to further obscure their transactions.

9.     BTC is sent to and from virtual currency "addresses," roughly equivalent to anonymous account numbers. A virtual currency address is a unique token; however, BTC are designed such that one person may easily operate many such accounts. Like sending and receiving an email via an email address, a user can send and receive BTC via a BTC address. People commonly have many different BTC addresses, and an individual could theoretically use a unique address for every transaction in which they engage. A user can also send BTC from multiple addresses in one transaction; however, to spend virtual currency held within a BTC address, the user must have a private key, which is generated when the address is created and is shared only with the address key's initiator. Similar to a password, a private key ensures secured

3

access to the virtual currency. Consequently, only the holder of a private key for a virtual currency address can spend from the address. Although the owners of virtual currency addresses generally are not known unless the information is made public by the owner (e.g., by posting the address in an online forum or providing the address to another user for a transaction), analyzing the blockchain can sometimes lead to identifying both the owner of an address and any other accounts that the person or entity owns and controls.

10.     Virtual currency is often transacted using a virtual currency exchange, which typically acts as a trading platform and storage platform. Most virtual currency exchanges facilitate trading between the U.S. dollar, other fiat currencies, BTC, and other virtual currencies. Many virtual currency exchanges also store their customers' virtual currency. These exchanges act as money services businesses and are legally required to conduct due diligence of their customers and to have anti-money laundering checks in place. Virtual currency exchanges doing business in the United States are regulated under the Bank Secrecy Act, codified at 31 U.S.C. § 5311 et seq., and must collect identifying information of their customers and verify their clients' identities.

11.     Since the BTC blockchain serves as a searchable public ledger of every BTC transaction, investigators may trace transactions to virtual currency exchanges. For example, because those exchanges collect identifying information about their customers, subpoenas or other appropriate legal process submitted to these exchangers can, in some instances, reveal the true identity of the individual responsible for the transaction.

**Blockchain Analysis**

12.     As previously stated, while the identity of a BTC address owner is generally anonymous, law enforcement can identify the owner of a particular BTC address by analyzing

4

the blockchain. The analysis can also reveal additional addresses controlled by the same individual or entity. For example, a user or business may create many BTC addresses to receive payments from different customers. When the user wants to transact the BTC that he/she has received (for example, to exchange BTC for other currency or to use BTC to purchase goods or services), the user may group those addresses together to send a single transaction. Law enforcement uses commercial services offered by several different blockchain-analysis companies to investigate BTC transactions. These companies analyze the BTC blockchain and attempt to identify the individuals or groups involved in transactions. Specifically, these companies create large databases that group BTC transactions into "clusters" through analysis of data underlying BTC transactions.

13. Through numerous unrelated investigations, law enforcement has found the information provided by these companies to be reliable. The third-party blockchain-analysis software utilized in this case is an anti-money laundering software used by financial institutions and law enforcement organizations worldwide. This third-party blockchain analysis software has supported many investigations and has been the basis for numerous search and seizure warrants, and as such, has been found to be reliable. Additionally, computer scientists have independently shown that they can use "clustering" methods to take advantage of clues regarding how BTC are typically aggregated or split up to identify BTC addresses and their respective account owners.

**The Tor Network**

14. The Tor network is designed specifically to facilitate anonymous communication over the Internet. In order to access the Tor network, a user must install Tor software either by downloading an add-on to the user's web browser or by downloading the free "Tor browser bundle" available at www.torproject.org. Use of the Tor software bounces a user's

5

communications around a distributed network of relay computers run by volunteers all around the world, thereby masking the user's actual Internet Protocol ("IP") address which could otherwise be used to identify a user.

15.     Because of the way Tor routes communications through other computers, traditional IP identification techniques are not viable. When a user on the Tor network accesses a website, for example, the IP address of a Tor "exit node," rather than the user's actual IP address, shows up in the website's IP log. An exit node is the last computer through which a user's communications were routed. There is no practical way to trace the user's actual IP address back through that Tor exit node IP address. A criminal suspect's use of Tor makes it extremely difficult for law enforcement agents who are investigating an "onion service" (formerly known as a "hidden services") to detect the host's, administrator's, or user's actual IP addresses or physical locations.

16.     Within the Tor network itself, entire websites can be set up as "onion services." "Onion services" operate the same as regular public websites with one critical exception. The IP address for the web server is hidden and instead is replaced with a Tor-based web address, which is a series of algorithm-generated characters, such as "asdlk8fs9dflku7f" followed by the suffix ".onion." A user can only reach these "onion services" if the user is using the Tor client and operating in the Tor network. And, unlike an open, public Internet website, it is not possible to determine the IP address of a computer hosting a Tor "onion service" by using publicly available lookup tools. As a result, neither law enforcement nor Tor users can determine the location of the computer that hosts the website through those public lookups.

**Darknet Markets**

17.     "Darknet markets" are commercial websites that are typically hosted as Tor onion services. Darknet markets primarily function as black markets where one can sell or broker transactions involving: illegal drugs; cybercriminal tools (e.g., malware); weapons; counterfeit currency; stolen personally identifiable information; forged documents and identification credentials; and other illicit goods and services. BTC is the most common method of payment for products and services procured on darknet markets. As described in detail below, Genesis Market is a darknet market and is the subject of the instant investigation.

## PROBABLE CAUSE

**Background Regarding the Genesis Market Investigation**

18.     In August 2018, a confidential source of information ("CS"),[2] working for the FBI, was inspecting a notorious computer hacking forum and observed an advertisement for an illicit online marketplace (a darknet market) named Genesis Market. Genesis Market is a private marketplace hosted at the Internet domain "genesis.market."[3] Genesis Market's operators compile stolen data (*e.g.*, computer and mobile device identifiers, email addresses, usernames, and passwords) from malware-infected computers around the globe and package it for sale on the

---

[2] CS has been cooperating with U.S. law enforcement since 2017. CS has a prior conviction for a computer-related crime. CS is cooperating in exchange for a reduced sentence. CS has provided law enforcement with timely and reliable information that has been corroborated via recorded conversations and "controlled buys" (*i.e.*, when, at the direction of law enforcement, an individual purchases illegal drugs or other products). The information provided by CS regarding Genesis Market has been corroborated by my own investigative actions, which are discussed, in part, herein.

[3] A domain name is a way to identify computers on the Internet, using a series of characters that correspond with a particular IP address.

7

market.[45] These packages of stolen data allow criminals to impersonate a victim's browser activity and bypass anti-fraud detection systems. In sum, because these packages allow a criminal actor to masquerade as a victim, the criminal actor is able to trick a third-party company's anti-fraud detection system into granting the criminal actor access to the application or website.

19.      As of February 21, 2021, there were approximately 355,000 packages listed for sale on Genesis Market. Each package represents a single, compromised computer or device. According to Genesis Market's website, the packages are located across North America (including in the Eastern District of Wisconsin), Europe, South America, and parts of Asia. After observing this advertisement, the CS alerted the FBI, and the FBI began this investigation.

20.      Over the course of the last two years, the FBI has observed that the packages of stolen data are searchable by their physical location and listed by their device name. The device name is unique and assigned by the device manufacturer. The prices of the packages vary and depend, primarily, on three factors: (1) the number of online accounts ("resources") associated with the package (*e.g.*, accounts with legitimate credentials for platforms like Amazon, Netflix, Gmail, etc. are more valuable); (2) how recently the package was compromised; and (3) whether there is a "fingerprint" associated with the package. A fingerprint is a group of identifiers that third-party applications or websites use to identify a computer or device. These fingerprints allow the applications or websites to confirm that the device is a trusted source. The FBI has

---

[4] Genesis Market refers to these packages of stolen data as "bots" on their site; however, typically, an Internet bot refers to a piece of software that runs automated tasks over the Internet. Since Genesis Market's use of the word "bot" strays from the normal meaning, the term "package" is used throughout this request.

[5] Malware, or malicious software, is any piece of software that is written to damage and/or steal data from an Internet connected device. Viruses, trojans, spyware, and ransomware are all different types of malware.

determined that in situations where a fingerprint is associated with a package, Genesis Market provides the purchaser with a proprietary plugin (*i.e.*, an Internet browser extension that provides additional functionality). This proprietary plugin amplifies that purchaser's ability to control and access the package's data.

21.     At the FBI's direction, the CS created a customer account on Genesis Market, and on September 19, 2018, CS purchased ten packages in exchange for $300 U.S. dollars' worth of BTC.[6] After Genesis Market received payment, CS obtained control of the packages, including all associated usernames and passwords. The FBI has reviewed the data from these packages and determined that Genesis Market works as advertised: it is, in fact, collecting and selling victims' personal identifying information around the world.

### Genesis Market's Connections to the Eastern District of Wisconsin

22.     Since the initial purchase on September 19, 2018, the FBI has funded (via BTC transactions) the purchase of approximately 113 packages on Genesis Market. Of those packages, approximately 27 were stolen from computers located in Wisconsin, seven of which were located in the Eastern District of Wisconsin. Agents showed the seven victim computer owners in the Eastern District of Wisconsin the usernames and passwords that the agents had obtained via the Genesis Market, and the victims confirmed that the usernames and passwords belonged to them and had been stolen.

### Tracing the Bitcoin Addresses Associated with Genesis Market

23.     As explained above, the FBI has funded the purchase of approximately 113 packages on Genesis Market. Those purchases were made using BTC, which is traceable along

---

[6] This purchase was funded by the FBI.

the BTC blockchain. Additionally, FBI agents have reviewed records from QHoster, the hosting provider for the Internet domain ███████████" Those records revealed three BTC addresses were associated with the registration email for the Internet domain ███████████." While conducting blockchain analysis to trace those BTC addresses, FBI agents observed that portions of those BTC payments made their way to or through a BTC address ending ████████ ("BTC Address 1"). The analysis further revealed that BTC Address 1 sent approximately 20 payments to merchants who used a BTC payment processer named BitPay, a U.S.-based entity. Those 20 payments each have a unique "transaction ID" associated with them.

24.     In or about September 2019, BitPay (in response to subpoena process) provided the FBI with subscriber information related to the 20 payments from BTC Address 1. These BitPay records included information about the merchant associated with each transaction ID, as well as the buyer's name, address, and email. BitPay's records showed that one of the 20 transactions was conducted from ████████████████████████████████ ████████████████████████████████████████ ██ ████████████ ██████████████████████████████████████ ████████████████████████████████████ ███████████████████████████ ████████████████████████

**Search Warrant for Data from GreenCloudVPS**

25.     Based, in part, on the foregoing, this court issued a warrant to search information held by GreenCloudVPS, a hosting provider that specializes in virtual private server ("VPS")

---

[7] Throughout this affidavit, names and other personal identification information have been redacted throughout this affidavit, using the letter "X," as a means of avoiding the revelation of any sensitive information.

10

services. A VPS is a virtual machine sold as a service by an Internet hosting provider. Records from GreenCloudVPS confirmed that BTC Address 1 was used to pay for Genesis Market's proxy VPS. Proxy servers act as intermediaries for requests from a "client" (*i.e.*, a computer that connects to and uses the resources of a remote computer or server) to a server. Based on my training and experience, I know that criminal actors typically use a combination of proxy servers and virtual private networking to obfuscate their location and avoid law enforcement detection. Here, I believe that Genesis Market's administrators used GreenCloudVPS as a means of concealing the true location of Genesis Market's backend servers.



26.

**Data from the Server Hosting Traffic Related to
Genesis Market IP Addresses 62.138.8.171 and 85.25.203.178**

27.

---

[8] A Secure Sockets Layer ("SSL") certificate is a digital certificate that authenticates the identity of a website and encrypts information sent to the server. An SSL certificate contains the following information: certificate holder's name; the certificate's serial number and expiration date; a copy of the certificate holder's public key; and the digital signature of the certificate-issuing authority. If one is dealing with information that requires encryption (*e.g.*, payment or other personal information), a website operator needs an SSL certificate.

11

████████████████████████████████████████

████████████████████████████████

██    ████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████

**The Target Accounts**

29.     While reviewing the forensic image of the server hosting IP addresses

████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

██████████████████████████████

████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

30.     ██████████████████████████████

████████████████████████████████████

████████████████████████████████

█████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████

██████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

███████████████████

31.    ██████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████

32.    Based on the information from Apple, legal process was served to Google for subscriber information related to email address ██████████████████████████████

████████████████████████████

---

[9] Based on my review of the evidence thus far, I believe this date is important because it is right around the time of the earliest known Genesis Market activity—July 26, 2016. That activity was related to the Genesis Market domain "gen2dev.net." A review of the forensic image of the server associated with IP addresses 62.138.8.171 and 85.25.203.178 also revealed that the domain "gen2dev.net" was being used by Genesis Market administrators (1) to remotely process BTC transactions for Genesis Market, and (2) to test the functionality of Genesis Market-related websites.

13

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████

33.     In response to a follow-up process regarding the Apple account associated with

email address ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████

34.     As described in the paragraphs above, Genesis Market administrators used IP

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

35.     Due to the above overlap of logins from IP address ████████████████████

████████████████████████████████████████████████████████████████████████

14

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████. Therefore,

information requested from the target accounts will likely assist law enforcement in this

investigation of Genesis Market, including the identification of Genesis Market administrators.

Again, while the last recorded login to the Target Google Account was listed as May 26, 2014, I

believe that, due to the fact that the Target Google Account is linked to the Target Apple

Account, which is currently active, there may be forensic evidence on the Target Google

Account that is automatically generated from the Target Apple Account. Additionally, I know,

based on my experience, that a user's operational security (OPSEC) is often at its lowest when

accounts are first created. Additionally, the general OPSEC practices of 2014 are very different

than 2021, and identification techniques of 2021 may allow for the FBI to identify a user who

performed moderate OPSEC of the Target Google Account back in 2014.

36.     On February 23, 2021, a preservation request was set to Google for the Target

Google Account. On March 3, 2021, a preservation request was sent to Apple for the Target

Apple Account.

## BACKGROUND CONCERNING GOOGLE

37.     Google provides its subscribers with Internet-based accounts that allow them to

send, receive, and store emails online. Google accounts are typically identified by a single

username, which serves as the subscriber's default email address, but which can also function as

a subscriber's username for other Google services, such as instant messages and remote photo or

file storage.

15

38.     Based on my training and experience, I know that Google allows subscribers to obtain accounts by registering on Google's website. During the registration process, Google asks subscribers to create a username and password, and to provide basic personal information such as a name, an alternate email address for backup purposes, a phone number, and in some cases a means of payment. Google typically does not verify subscriber names. However, Google does verify the email address or phone number provided.

39.     Once a subscriber has registered an account, Google provides email services that typically include folders such as an "inbox" and a "sent mail" folder, as well as electronic address books or contact lists, and all of those folders are linked to the subscriber's username. Google subscribers can also use that same username or account in connection with other services provided by Google.[10]

40.     In general, user-generated content (such as email) that is written using, stored on, sent from, or sent to a Google account can be permanently stored in connection with that account, unless the subscriber deletes the material. For example, if the subscriber does not delete an email, the email can remain on Google's servers indefinitely. Even if the subscriber deletes the email, it may continue to exist on Google's servers for a certain period of time.

41.     Thus, a subscriber's Google account can be used not only for email but also for other types of electronic communication, including instant messaging and photo and video sharing; voice calls, video chats, and SMS text messaging; and social networking. Depending on user settings, user-generated content derived from many of these services is normally stored on

---

[10] Here, as shown via Google' records described above, Google's other services associated with the Target Google Email Account include Web & App Activity (bookmarks and recorded browsing history), Gmail (email service), Google Photos (photo sharing), Google Hangouts (instant messaging and video chats), and Chrome Web Store (online store for Google's Chrome browser).

16

Google's servers until deleted by the subscriber. Similar to emails, such user-generated content can remain on Google's servers indefinitely if not deleted by the subscriber, and even after being deleted, it may continue to be available on Google's servers for a certain period of time. Furthermore, a Google subscriber can store contacts, calendar data, images, videos, notes, documents, bookmarks, web searches, browsing history, and various other types of information on Google's servers. Based on my training and experience, I know that evidence of who controlled, used, and/or created a Google account may be found within such computer files and other information created or stored by the Google subscriber. Based on my training and experience, I know that the types of data discussed above can include records and communications that constitute evidence of criminal activity.

42.    Based on my training and experience, I know that providers such as Google also collect and maintain information about their subscribers, including information about their use of Google services. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. Providers such as Google also commonly have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with other logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which devices were used to access the relevant account. Also, providers such as Google typically collect and maintain location data related to subscriber's use of Google services, including data derived from IP addresses and/or Global Positioning System ("GPS") data.

17

43.     Based on my training and experience, I know that providers such as Google also collect information relating to the devices used to access a subscriber's account – such as laptop or desktop computers, cell phones, and tablet computers. Such devices can be identified in various ways. For example, some identifiers are assigned to a device by the manufacturer and relate to the specific machine or "hardware," some identifiers are assigned by a telephone carrier concerning a particular user account for cellular data or voice services, and some identifiers are actually assigned by Google in order to track what devices are using Google's accounts and services. Examples of these identifiers include unique application number, hardware model, operating system version, Global Unique Identifier ("GUID"), device serial number, mobile network information, telephone number, Media Access Control ("MAC") address, and International Mobile Equipment Identity ("IMEI"). Based on my training and experience, I know that such identifiers may constitute evidence of the crimes under investigation because they can be used (a) to find other Google accounts created or accessed by the same device and likely belonging to the same user, (b) to find other types of accounts linked to the same device and user, and (c) to determine whether a particular device recovered during course of the investigation was used to access the Google account.

44.     Google also allows its subscribers to access its various services through an application that can be installed on and accessed via cellular telephones and other mobile devices. This application is associated with the subscriber's Google account. In my training and experience, I have learned that when the user of a mobile application installs and launches the application on a device (such as a cellular telephone), the application directs the device in question to obtain a Push Token, a unique identifier that allows the provider associated with the application (such as Google) to locate the device on which the application is installed. After the

applicable push notification service (*e.g.*, Apple Push Notifications ("APN") or Google Cloud Messaging) sends a Push Token to the device, the Token is then sent to the application, which in turn sends the Push Token to the application's server/provider. Thereafter, whenever the provider needs to send notifications to the user's device, it sends both the Push Token and the payload associated with the notification (*i.e.*, the substance of what needs to be sent by the application to the device). To ensure this process works, Push Tokens associated with a subscriber's account are stored on the provider's server(s). Accordingly, the computers of Google are likely to contain useful information that may help to identify the specific device(s) used by a particular subscriber to access the subscriber's Google account via the mobile application.

45. Based on my training and experience, I know that providers such as Google use cookies and similar technologies to track users visiting Google's webpages and using its products and services. Basically, a "cookie" is a small file containing a string of characters that a website attempts to place onto a user's computer. When that computer visits again, the website will recognize the cookie and thereby identify the same user who visited before. This sort of technology can be used to track users across multiple websites and online services belonging to Google. More sophisticated cookie technology can be used to identify users across devices and web browsers. From training and experience, I know that cookies and similar technology used by providers such as Google may constitute evidence of the criminal activity under investigation. By linking various accounts, devices, and online activity to the same user or users, cookies and linked information can help identify who was using a Google account and determine the scope of criminal activity.

46. Based on my training and experience, I know that Google maintains records that can link different Google accounts to one another, by virtue of common identifiers, such as

19

common email addresses, common telephone numbers, common device identifiers, common computer cookies, and common names or addresses, that can show a single person, or single group of persons, used multiple Google accounts. Based on my training and experience, I also know that evidence concerning the identity of such linked accounts can be useful evidence in identifying the person or persons who have used a particular Google account.

47.     Based on my training and experience, I know that subscribers can communicate directly with Google about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Providers such as Google typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

48.     In summary, based on my training and experience in this context, I believe that the computers of Google are likely to contain user-generated content such as stored electronic communications (including retrieved and unretrieved email for Google subscribers), as well as Google-generated information about its subscribers and their use of Google services and other online services. In my training and experience, all of that information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. In fact, even if subscribers provide Google with false information about their identities, that false information often nevertheless provides clues to their identities, locations, or illicit activities.

49.     As explained above, information stored in connection with a Google account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element of the offense, or, alternatively, to exclude the innocent from further suspicion. From my training and experience, I know that the information stored in connection with a Google account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by Google can show how and when the account was accessed or used. For example, providers such as Google typically log the IP addresses from which users access the account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the Google account access and use relating to the criminal activity under investigation. This geographic and timeline information may tend to either inculpate or exculpate the person who controlled, used, and/or created the account. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Finally, stored electronic data may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information in the Google account may indicate its user's motive and intent to commit a crime (*e.g.*, communications relating to the

crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).[11]

     50.    Based on my training and experience, I know that evidence of who controlled, used, and/or created a Google account may be found within the user-generated content created or stored by the Google subscriber. This type of evidence includes, for example, personal correspondence, personal photographs, purchase receipts, contact information, travel itineraries, and other content that can be uniquely connected to a specific, identifiable person or group. In addition, based on my training and experience, I know that this type of user-generated content can provide crucial identification evidence, whether or not it was generated close in time to the offenses under investigation. This is true for at least two reasons. First, people that commit crimes involving electronic accounts (*e.g.*, email accounts) typically try to hide their identities, and many people are more disciplined in that regard right before (and right after) committing a particular crime. Second, earlier-generated content may be quite valuable, because criminals typically improve their tradecraft over time. That is to say, criminals typically learn how to better separate their personal activity from their criminal activity, and they typically become more disciplined about maintaining that separation, as they become more experienced. Finally, because email accounts and similar Google accounts do not typically change hands on a frequent basis, identification evidence from one period can still be relevant to establishing the identity of the account user during a different, and even far removed, period of time.

---

[11] At times, Internet services providers such as Google can and do change the details and functionality of the services they offer. While the information in this section is true and accurate to the best of my knowledge and belief, I have not specifically reviewed every detail of Google's services in connection with submitting this application for a search warrant. Instead, I rely upon my training and experience, and the training and experience of others, to set forth the foregoing description for the Court.

## BACKGROUND CONCERNING APPLE[12]

51.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

52.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

        a.     Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

        b.     iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

        c.     iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com.  iCloud Photo

---

[12] The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

23

Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

       d.      Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

       e.      Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

       f.      Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

       g.      App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television

24

shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

53.     Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

54.     Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

55.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

56.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage.  Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com.  Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

26

57.     Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data.  Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive.  Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

58.     In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

59.     For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation.  Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often

27

created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

60.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time.  As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

61.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

62.     Other information connected to an Apple ID may lead to the discovery of additional evidence  For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages,

Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

63.     Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

64.     I anticipate executing the warrants under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrants to require the providers to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

65.     Based on the forgoing, I request that the Court issue the proposed search warrant. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of the warrants. The government will execute each warrant by serving the warrant on the provider.  Because the warrants will be served on the providers, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

29

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Apple Directory Service Identifier

█████████████████████████████████ (the "Target Apple Account"), that is

stored at premises owned, maintained, controlled, or operated by Apple Inc., a company

headquartered at One Apple Park Way, Cupertino, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Apple Inc. ("Apple")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on March 3, 2021, Apple is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.     All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.     All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.     The contents of all emails associated with the account, from account inception to present, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.    The contents of all instant messages associated with the account, from account inception to present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.    The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.    All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.    All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h.    All records pertaining to the types of service used;

i.    All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j.    All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

3

## II. Information to be seized by the government

All information described above in Section I of Attachment B that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 1029 (trafficking access devices), 1028 (identity theft), 371 (conspiracy), 1343 (wire fraud), 1030(a)(2) (illegally accessing a protected computer), 1030(a)(5) (illegally damaging a protected computer), or 1030(b) (conspiracy to commit computer fraud) (collectively, the "Subject Offenses"), that have been and are being committed by unknown persons, and their associates, since approximately July 26, 2016, including information pertaining to the following matters:

    a.     All communications regarding the operation of Genesis Market;

    b.     Information that constitutes evidence of the identification or location of the user(s) of the Target Apple Account;

    c.     Information that constitutes evidence concerning persons who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated about matters relating to the criminal activity under investigation, including records that help reveal their whereabouts;

    d.     Information that constitutes evidence indicating the user's state of mind, *e.g.*, intent, absence of mistake, or evidence indicating preparation or planning, related to the criminal activity under investigation;

    e.     Information regarding any strains of malware;

    f.     Information regarding identity theft and/or personal identification information;

    g.     Information that constitutes evidence concerning how and when the accounts were accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the Account user;

    h.     Evidence related to virtual currency addresses and transactions;

    i.     Evidence related to transactions at virtual currency exchanges and/or the transfer of virtual currency; and

4

j.     Evidence indicating how and when the accounts were accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the offenses under investigation.

`     This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

5